UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHELE GIBSON | CIVIL ACTION |
| VERSUS | NO: 05-1942 |
| JOHN E. POTTER | SECTION: "K"(4) |

### ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec.Doc.No. 22) of Defendant John E. Potter, Postmaster General, wherein he claims there is no genuine dispute of material fact as to whether Plaintiff Michele Gibson was subjected to a hostile work environment based on sex. After reviewing the pleadings, memoranda, and relevant law, the Court hereby grants Defendant's motion for the reasons assigned below.

# I. BACKGROUND

At the time she was allegedly subjected to a hostile work environment in late 2003 and early 2004, Plaintiff Michele Gibson was employed as a casual automaton clerk[1] at the Processing and Distribution Center for the United States Postal Service ("USPS") in New Orleans, Louisiana. She worked on Tour I, which is the night shift generally lasting from 11:00 p.m. until 7:00 a.m.

On January 14, 2004, Plaintiff submits that she and another employee were having a conversation when her supervisor Andrew Lea approached her. Plaintiff alleges that Lea "grabbed her on the buttocks and made suggestive comments." *See* Compl, at ¶ 4 (Rec.Doc.No. 1).

The Manager of Distribution Operations, James Nelson, approached Plaintiff and inquired as to whether she was inappropriately touched.[2] He informed her of the Postal Services' "zero tolerance" policy, and that unwanted touching or advances constituted sexual harassment. Nelson also informed Plaintiff that if she ever had a problem he was available, and that she could expect an apology. Andrew Lea apologized to Plaintiff soon after the incident.

Another Manager of Distribution Operations, Aubrey Watson, investigated the January 14, 2004, incident, and indicated that Plaintiff would not have to work under Mr. Lea again and

---

[1] As a casual employee, Plaintiff had no specific assignments and was not under the same supervisor on every shift.

[2] It is not alleged that Plaintiff reported this incident.

gave Plaintiff the option of working on a different Tour. Plaintiff declined because she had no transportation to work on a different Tour.

Although Mr. Lea denied touching or grabbing Plaintiff's buttocks, Watson recommended that Lea's pay and grade be reduced based upon his improper conduct. Acting Senior Plant Manager, Lawrence Darsam modified this recommendation giving Mr. Lea a fourteen day suspension.

On February 4, 2004, Plaintiff filed an informal Equal Employment Opportunity ("EEO") administrative complaint in which she described the January 14, 2004, incident.[3] On June 10, 2004, the USPS issued a letter to Plaintiff accepting for investigation only the single issue of sex discrimination occurring on January, 14, 2004. Plaintiff was given the opportunity to object if she did not agree with defined issues accepted for investigation. Plaintiff submits that she does not recall getting this letter.

On August 7, 2004, Plaintiff submitted an affidavit to the EEO investigator alleging additional misconduct on the part of Mr. Lea occurring between October 2003 and January 2004. The EEO investigator requested details of these charges affording the Plaintiff the opportunity to submit a supplementary affidavit describing these additional incidents of sexual harassment. Plaintiff was given until December 1, 2004, to file such affidavit, but Plaintiff did not do so until January 3, 2005, though Plaintiff offers that it was mailed on December 24, 2004. In the supplementary affidavit untimely submitted to the EEO investigator, Plaintiff wrote:

> After the "butt-grabbing incident (sic) on 1/14/04, I began to keep a calender. However, the incidents asked about for the

---

[3] After an EEO Dispute Resolution Specialist was unable to resolve the dispute, Plaintiff filed a formal EEO administrative complaint on May 4, 2004.

>supplemental affidavit all happened before the "butt" incident & the start of my calender. Therefore, I cannot identify exact dates Lea asked for dates, gave me his telephone #, etc. (My calender shows the dates he came into my work area & the day I was required to work in his unit!)
>
>The events in Items 1-4 happened in this order:[4]
>
>1) "Sex Talk" in Sept/Oct 2003 about 50% of the time I saw him, i.e., 1-2 x weeks until 1/14/04. It consisted of remarks about oral sex, how he could make me feel good, how he would serve me on a platter, how once I came to his house I would never want to leave. These remarks were combined with trying to stick his tongue in my ear, poking me in the side, etc. I brushed him off, laughed at him, "stop playing with me," "my boyfriend's cousin works in this unit," (indecipherable).
>
>2) He then began to ask me for dates. These "date" requests were always to come to his house in LaPlace (a suburb 20+ miles from NO.). He would say, "When are you going to make that drive to LaPlace?" "Once you come, you're never going to want to leave." These requests were as frequent as the "sex-talk." She made the same response to the date requests as to the "sex-talk."
>
>3) Lea gave me his telephone # before Thanksgiving 2003. I do not remember the exact date.

*See* Mot. Summ. J., Exhibit A-7 ("Supplementary Affidavit) (Rec.Doc.No. 22).

A final agency decision was issued on February 22, 2005. This decision did not account for the additional charges of sexual harassment, and ultimately found that Plaintiff had not suffered sex discrimination as alleged.[5] *See* Mot. Summ. J., Exhibit A-9 ("Notice of Final

---

[4] Item 4 is not included in the supplementary affidavit.

[5] The decision stated, "The records and testimony contained in the investigative report only document that a single incident occurred which resulted in your alleged claim of sexual harassment. Therefore, because of [Plaintiff's] failure to provide any documented evidence of an ongoing incident, our adjudication of our claim will be based on the accepted issue." *See* Notice of Final Decision, at p. 3.

4

Decision") (Rec.Doc.No. 22).

Plaintiff filed the instant Complaint on May 31, 2005, wherein she alleges that she was subjected to a hostile work environment beginning in October 2003, and that the administrative decision was improperly limited to the January 14, 2004, incident.

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. "[M]ere allegations or

denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id*. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc*., 828 F.2d 291, 294 (5th Cir. 1987).

### III. ANALYSIS

#### A.     Failure to Exhaust Administrative Remedies

Defendant first claims that the allegations of sexual harassment other than that involving the single incident occurring on January 14, 2004, are not properly before the Court because Plaintiff has not exhausted her administrative remedies with respect to these claims.[6] Clearly, a

---

[6] Plaintiff contends that the Court should consider the other allegations of sexual harassment to evaluate the severity of the January 14, 2004, incident. Plaintiffs incorrectly cites *Shanoff v. Illinois Dept. Human Servs.*, which held that "[A]lthough the harassing conduct that occurred before the limitations period is time-barred and not actionable, we may consider that conduct (the "haughty Jew" remark, the other facially discriminatory remarks, threats, and other harassment) to illuminate the nature of the hostility involved in the actionable conduct." 258 F.3d 696, 705 (7th Cir. 2001) (*citing See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558

Title VII plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before filing a judicial complaint. 42 U.S.C. § 200e-5(f)(1); *Johnson v. MBNA Hallmark Information Serv. Inc.,* 2003 WL 21418670 (N.D. Tex. Jun. 16, 2003)(*citing Barnes v. Levitt,* 118 F.3d 404, 408 (5th Cir. 1997)). However, "[a] Title VII claim is not necessarily restricted to the specifics a plaintiff alleges on the EEOC charge, but rather is limited to the scope of the investigation that can reasonably be expected to grow out of those allegations." *Douglas v. Mortenson Broadcasting Company*, 2005 WL 2778539, *2 (N.D. Tex. Oct. 24, 2005) (*citing Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000); *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450-51 (5th Cir. 1983).

The *Douglas* court was presented with an EEOC Complaint charging sex discrimination based on a single incident involving plaintiff's buttocks being groped. The court ruled that other incidents of sex discrimination could be presented as part of the Title VII claim because "the scope of any investigation of Plaintiff's Charge would reasonably include an inquiry into [alleged harasser]'s workplace behavior and interactions during the time he and Plaintiff worked together. *Douglas*, 2005 WL 22778539 at 2 (*citing Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)("A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but upon any kind of discrimination like or related to the charge's allegations..."); *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990) ("The scope of the inquiry is not, however, limited to the *exact* charge brought to the EEOC.")

---

(1977)); *see also Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199-200 (5th Cir. 1992). The issue here is not whether the prior incidents are time-barred, but whether they are excluded from the Court's consideration because Plaintiff did exhaust her administrative remedies with respect to these allegations.

(emphasis in original)).

Thus, the Court finds that the allegations of sexual harassment that occurred prior to January 14, 2004, fall within the ambit of a reasonable investigation into the January 14, 2004, incident, and thus, are part of Plaintiff's Title VII hostile work environment claim.

**B.     Hostile Work Environment**

The ultimate question before the Court is whether there exists a genuine issue of material fact as to whether Plaintiff was subjected to a hostile work environment because of sex by virtue of Mr. Lea's alleged harassment beginning in October 2003.

The purpose of a claim for hostile work environment is to "level the playing field for women who work by preventing other from impairing their ability to compete on an equal basis with men." *De Angelis v. El Paso Municipal Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir. 1995). A claim for hostile environment "embodies a series of criteria that express extremely insensitive conduct so egregious as to alter the conditions of employment and to destroy equal opportunity in the work place." *Id.*

When the claimant has not suffered a tangible employment action,[7] a claimant must show that she was subjected to a hostile work environment.[8] *See Casiano v. AT&T Corp.*, 213 F.3d

---

[7] "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

[8] The methodology for analyzing supervisor sexual harassment cases under Title VII was articulated in the companion cases, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

278, 284 (5th Cir. 2000); *Marks v. Shaw Constructors, Inc.*, 2001 WL 1426649 (E.D. La. Nov. 13, 2001). Here, Plaintiff does not claim that she suffered an adverse employment action.

The Fifth Circuit employs a five-factor test to determine if a plaintiff has advanced a viable sexual harassment claim alleging hostile work environment. To do so, a victim must establish that:

> (1) the employee belongs to a protected class;
> (2) the employee was subject to unwelcome sexual harassment
> (3) the harassment complained of was based on sex;
> (4) the harassment was sufficiently pervasive or severe as to create an abusive working environment; and
> (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Green v. Administrators of the Tulane Education Fund*, 284 F.3d 642, 655 (5th Cir. 2002).

However, in the wake of *Burlington Ind. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, the Fifth Circuit has recognized that when the alleged harasser is a supervisor with authority over the employee, only the first four elements need be satisfied. *Watts v. Kroger,* 170 F.3d 505, 1999 WL 147382, *3 (5th Cir. 1999), *citing Williamson v. City of Houston,* 148 F.3d. 462, 464 (5th Cir.1998). Nevertheless, the *Faragher/Ellerth* courts did afford the employer an affirmative defense to avoid vicarious liability, which is described as follows:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... see Fed. Rule. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or

>corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher,* 524 U.S. at 808. Thus, there is now vicarious liability on the part of the employer and an available affirmative defense where no tangible employment action has occurred.

Plaintiff can certainly satisfy the first three prongs; thus, the Court is presented with whether there exists genuine issues of material fact as to 1) whether the January 14, 2004, incident was severe or pervasive; and 2) whether Defendant can establish the *Ellerth/Faragher* affirmative defense. The Court finds there is no genuine dispute of material fact as to both issues and grants summary judgment in favor of Defendant for the reasons that follow.

**C.     Severity or Pervasiveness of Single Incident of Sexual Harassment**

In a hostile work environment claim, the alleged sexual harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.[9] *Farpella-Crosby,* 97 F.3d at 806. "In order to state a cause of action under Title VII, a sexually objectionable environment must be both subjectively and objectively offensive."[10] *Green*, 284 F.3d at 655. "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity

---

[9] The Fifth Circuit has recently emphasized that the conduct need only be either severe or pervasive as opposed to both severe and pervasive in order to support a hostile work environment claim. *Harvill v. Westward Communications*, 433 F.3d 428 (5th Cir. 2005).

[10] There is certainly a genuine dispute as to material fact as to whether Plaintiff found the alleged harassment subjectively offensive such that it produced a hostile work environment. Thus, the Court need not examine this issue further for the purposes of this motion.

of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

Although non-recurring incidents of sexual harassment are not often objectively found to be of a severe or pervasive character as to create an abusive work environment,[11] "duration of sexually offensive misconduct is not determinative." *Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 802 (5th Cir. 1999) (*citing Butler v. Ysleta Ind. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998)(listing "frequency of discriminatory conduct" as one factor and should not be afforded "undue wieght"); *Lockard v. Pizza Hut, Inc*., 162 F.3d 1062, 1072 (10th Cir. 1998)("We therefore disagree with defendants' assertions that a single incident of physically threatening conduct can never be sufficient to create an abusive environment.")); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment...").

The determination of whether alleged conduct is sufficiently severe or pervasive is far from being a mathematically precise test,[12] which is illustrated by the following survey of cases. In *Hockman v. Westward Commc'n, L.L.C.*, 122 F. Appx. 734 (5th Cir. 2004), the court held that a co-worker comment to plaintiff about another employee's body, slapping plaintiff on the

---

[11] This Court has previously held that a single incident of brushing off dirt from the plaintiff's buttocks, which lasted at most thirty seconds, under the pretext of being helpful would constitute sexually offensive conduct; however, the conduct was not severe or pervasive such that it would constitute sexual harassment under Title VII. *Marks v. Shaw Constructors, Inc.*, 2001 WL 1426649 (E.D. La. Nov. 13, 2001).

[12] *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993).

behind with a newspaper, grabbing or brushing up against the plaintiff's breasts and behind, and attempting to kiss the plaintiff were not severe as a matter of law. In *Jones v. Seago Manor Nursing Home*, 2002 WL 31051027 (N.D. Tex. Sept. 11, 2002), the court ruled that the conduct at issue was not sufficiently severe or pervasive to create a hostile work environment. Such conduct included when supervisor told her, "You know, if I stick [my penis] in you, you'll say computer right;" and said "Ooh, girl, I could stick this long [expletive deleted] in you and you ... go tell your husband that you'll leave him for a white man;" touched plaintiff's buttocks and remarked that "it must be jelly because jam [does not] shake like that;" and grabbed his crotch and looked at plaintiff).

In *E.E.O.C. v. Rite Aid Corp.*, 2004 WL 1488578, *6 (E.D. La. Jun. 30, 2004), the court found that alleged instances where co-workers brushed up against plaintiff in the aisles, the three times that one of them cornered her in the store, and "any other unwelcomed physical touching--allegations of which are relatively few in number over several months – were neither severe nor physically threatening, though quite unwelcome."

On the other hand, in *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428 (5th Cir. 2005), the Fifth Circuit held that there was a genuine issue of material fact as to whether the alleged offensive conduct was sufficiently severe to support a hostile work environment claim. The harassment occurred over period of eight months, and during this period the co-worker grabbed her and kissed her on the cheek, popped rubber bands at her breasts, fondled her breast "numerous times," patted her on her buttocks "numerous times," and came behind and rubbed his body against her. The co-worker also made comments to her about her sex life and abilities in bed. The court commented that "[u]ndoubtedly, the deliberate and unwanted touching of

[plaintiff]'s intimate body parts can constitute severe sexual harassment." *Harvill*, 433 F.3d at 436 (*citing Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment.").

More recently, the Fifth Circuit in *McKinnis v. Crescent Guardian, Inc.*, 189 Fed. Appx. 307 (5th Cir. 2006), reversed the district court's finding that the sexually harassing conduct was not severe enough as a matter of law to support a hostile work environment claim. The sexually harassing conduct included "more than just inappropriate comments and a pat on the arm; [the co-worker] touched the intimate areas of [plaintiff]'s body, and, reviewing the allegation in the light most favorable to [plaintiff], on a number of occasions."

In reaching its conclusion, the Fifth Circuit juxtaposed *Harvill* and *Shephard v. Comptroller of Public Accounts of State*, 168 F.3d 871 (1999). In *Shepherd,* the alleged harasser engaged in the following inappropriate behavior which the court ultimately found was not severe or pervasive: (1) made two inappropriate comments on two different occasions ("your elbows are the same color as your nipples" and "you have big thighs"); (2) attempted to look down the plaintiff's clothing several times; (3) touched her arm several times, once rubbing his hand from her shoulder down to her wrist; and (4) twice, patted his lap and remarked "here's your seat." *Shepherd,* 168 F.3d at 872.

The Court finds that this case falls between *Shephard* and *McKinnis*. Here, Mr. Lea is said to have touched plaintiff's buttocks on one occasion, and on several occasions attempted to stick his tongue in her ear and poked her in her side. This is in addition to the number of incidences when Mr. Lea solicited Plaintiff for dates as well as made inappropriate comments to her.

13

Notably, *Harvis* and *McKinnis* relied upon the multiple instances of inappropriate physical contact with plaintiff's intimate body parts. Here, there is only one such instance, and even considering January 14, 2004, incident in light of prior conduct, the alleged does not become objectively severe or pervasive. Here, Plaintiff never reported any prior incidents to her employer. Moreover, the employer initiated the investigation of the January 14, 2004, on its own initiative and not as a result of a complaint by the Plaintiff. Significantly, Plaintiff did not apprise the employer of the incidents that occurred prior to January 14, 2004, even after the January 14, 2004, incident. Given Plaintiff's comments that she "brushed [Mr. Lea] off" and "laughed at him," coupled with her patent failure to report such incidents to her employer, it is apparent that the nature of the prior physical contact and comments were not severe or pervasive themselves. Thus, looking at the totality of circumstances and comparing such with prior Fifth Circuit law, the Court finds that Plaintiff's allegations do not support recovery for a hostile work environment claim because they were not severe or pervasive as a matter of law.

### D.   Failure to Take Preventative or Corrective Action

Defendant must show that 1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and 2) that the plaintiff employee unreasonably failed to take advantage of any preventative and corrective opportunities. *Faragher*, 524 U.S. at 808; *see also Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405 (5th Cir. 2002).

The Court finds that there is no genuine dispute of material fact as to whether Defendant exercised reasonable care to prevent and correct promptly the sexually harassing behavior

14

involved in this case. Defendant submits evidence that it conducts sexual harassment training of new employees as well as displayed posters throughout work areas instructing employees how to report sexual harassment, in an effort to prevent sexual harassment in the workplace. In an effort to correct promptly the alleged harm suffered by Plaintiff, Defendant fully investigated the January, 14, 2004, incident, and ultimately removed Mr. Lea from Plaintiff's supervision. Mr. Lea was made to apologize to Plaintiff and was further suspended for fourteen days because of the incident. Defendant also offered Plaintiff the opportunity to take on a different shift where Mr. Lea would not be present. Plaintiff did not take the separate shift because of transportation issues.

On the other hand, Plaintiff alleges that the harassment continued as Mr. Lea continued to come into her work unit and walk by and stare at her. She reported this to her union steward. She was moved again, but he still came into her work area and stared at her. Postal Service policy suggests notifying a union official or representative is an appropriate channel to complain of sexual harassment. *See* Opp. Mot. Summ. J., Exhibit A-10 (Rec.Doc.No. 22).

However, Plaintiff did not inform her supervisor or union official of the harassment that occurred prior to January 14, 2004, until August 2004. Perhaps, if Defendant was informed of the prior harassment, it could have taken reasonable steps to make certain Plaintiff's concerns were addressed. Instead, Defendant only had knowledge of what arguably could be considered an inappropriate practical joke. Moreover, considering that Plaintiff was the only person in position to inform Defendant of Mr. Lea's alleged inappropriate behavior and had ample opportunity to do so, it is without excuse that Plaintiff failed to inform her employer of these incidents if she thought them at all serious. Thus, the Court finds that Defendant exercised

reasonable care taking preventative and corrective action with respect to the January 14, 2004, incident, because Defendant was simply never apprised of Mr. Lea's alleged pattern of harassing conduct towards Plaintiff.

As for the second element, the Court finds that Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. Defendant submits that Plaintiff was informed of USPS' policy on sexual harassment and given training on how and where to report sexual harassment, just as was every Postal Service employee. Moreover, Defendant submits that there were posters displayed throughout all work areas relating to how to report sexual harassment.

Plaintiff alleges that she does not remember receiving any of this training or receiving any materials related to the employer's anti-harassment policy. Moreover, she alleges that she does not recall seeing any posters displayed at the workplace.

The Court notes that one of the most troubling aspects of Plaintiff's case is that she did not report the instances of harassment that occurred prior to January 14, 2004. In fact, she admits that she "brushed him off" and "laughed at him." She also told Mr. Lea to "stop playing" with her and told him that her boyfriend's cousin worked in the unit. If she felt these acts were at all serious as she alleges now,[13] Plaintiff had a duty to report Mr. Lea to her supervisor, union official, or an EEO counselor per Defendant's procedures. She simply did not tell anyone, and thus, unreasonably failed to take preventative measures to allow her employer to protect her from the alleged hostile work environment. Accordingly,

---

[13] Her comments do imply that she thought Mr. Lea's conduct was not that serious. Of course, this demonstrates that the conduct was not severe or pervasive.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec.Doc.No. 22) is **GRANTED**.

New Orleans, Louisiana, on this 10th day of May, 2007.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**